UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Harvey Dupey, | File No. 12-cv-1233 (RHK/TNL) |
| Plaintiff, | **REPORT** |
| | **&** |
| v. | **RECOMMENDATION** |
| Jennifer Smith, Ann McDonald, Sara Hard, Nan Larson, and Michelle Smith, | |
| Defendants. | |

Harvey Dupey, 216374, MCF-OPH, 5329 Osgood Avenue North, Stillwater, MN 55082 (pro se);

Margaret E. Jacot, **Minnesota Attorney General's Office**, 445 Minnesota Street Ste 900, Saint Paul, MN 55101 (for Defendants Jennifer Smith, Sara Hard, Nan Larson, and Michelle Smith); and

Andrea Pavelka Hoversten and John B. Casserly, **Geraghty, O'Loughlin & Kenney, PA**, 55 East Fifth Street Ste 1100, Saint Paul, MN 55101 (for Defendant Ann McDonald).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motions to Dismiss and for Summary Judgment. (ECF Nos. 28, 50.) This action has been referred to the Magistrate Judge for report and recommendation to United States District Judge Richard H. Kyle under 28 U.S.C. § 636 and Local Rule 72.1(a). Based upon the record, memoranda, and arguments before the Court, **IT IS HEREBY RECOMMENDED** that the Motions be **GRANTED**, that Plaintiff's Petitions for Writs of Habeas Corpus Ad Testificandum (ECF Nos. 18–19) be **DENIED AS MOOT**, and the case be **DISMISSED WITH PREJUDICE**.

1

I. **BACKGROUND**

Plaintiff Harvey Dupey is currently an inmate at the Minnesota Correctional Facility-Oak Park Heights. (Hudson Aff. Ex. A., ECF No. 37.) Plaintiff was incarcerated at Minnesota Correctional Facility-Stillwater ("MCF-STW") from October 28, 2011 until October 4, 2012. (*Id*.) Defendants Jennifer Smith, Sara Hard, Nanette Larson, and Michelle Smith are employees of the Minnesota Department of Corrections ("DOC") at MCF-STW.[1] (Answer at 2, ECF No. 13.) Defendant Ann McDonald is a nurse practitioner employed by Corizon, Inc. who treated Plaintiff in that capacity at MCF-STW. (Answer at 2, ECF No. 11.) Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated the Eighth and Fourteenth Amendments by failing to provide adequate medical care. (Am. Compl. at 5-7, ECF No. 9.) Plaintiff also alleges a medical negligence claim. (*Id*.)

A. **Plaintiff's Initial Injury**

Plaintiff first injured his right thumb by punching another inmate in the head during an altercation on August 29, 2011. (Paulson Aff. Ex. F at 1, ECF No. 30.) At that time, Plaintiff was incarcerated at the Minnesota Correctional Facility at Saint Cloud. (Paulson Aff. ¶ 9.) An x-ray revealed a fracture of the thumb at the base of the metacarpal bone. (Paulson Aff. Ex. H at 1.) Surgery was recommended and performed on September 2, 2011. (Paulson Aff. Ex. I at 2–3.) Pins placed in the thumb during

---

[1] Defendant Jennifer Smith is a Nurse Senior at MCF-STW. (J. Smith Aff. ¶ 1, ECF No. 33.) Defendant Sara Hard is the nursing supervisor for MCF-STW. (Hard Aff. ¶ 1, ECF No. 32.) Defendant Nanette Larson is the Director of Health Services for the DOC. (Larson Aff. ¶ 1, ECF No. 31.) Defendant Michelle Smith is the warden of MCF-STW. (M. Smith Aff. ¶ 1, ECF No. 34.)

surgery were removed on October 3, 2011. (*Id*. at 5.) Following another altercation on October 18, 2011, Plaintiff complained of tenderness in the same thumb. (Paulson Aff. Ex. F at 3.) Dr. Chad Holien, the doctor who performed the surgery, examined an x-ray taken after the second altercation. (*Id*.) He saw no new injury of the thumb and observed that the fracture had successfully healed. (*Id*.)

### B. Plaintiff's Treatment at MCF-STW

Plaintiff was transferred to MCF-STW on December 28, 2011. (Hudson Aff. Ex. A.) On May 9, 2012, Plaintiff sent a kite[2] to Defendant Sara Hard complaining of consistent pain in his right thumb and asked if someone could examine or x-ray it. (Paulson Aff. Ex. J.) Defendant Hard responded on May 10, informing Plaintiff that a practitioner would be in to see him the week of May 14. (*Id*.)

Defendant McDonald saw Plaintiff in segregation on May 16, 2012. (Paulson Aff. Ex. F at 4.) Defendant McDonald did not notice any increased swelling, discoloration, or bruising; the range of motion of the right thumb was within normal limits, and the thumb could be manipulated in all directions. (*Id*.) Although Defendant McDonald noticed weakness when Plaintiff squeezed her hands, she also noticed he did not use his thumb to do so. (*Id*.) After reviewing his charts, Defendant McDonald determined that no additional follow-up or treatment was necessary at that point. (*Id*.) Plaintiff commenced this action on May 22, 2012. (Compl.) Defendant McDonald saw Plaintiff again on

---

[2] A "kite" is a printed form issued by the DOC that offenders use to communicate with staff members. (Ebeling Aff. Ex A at 1, ECF No. 36.) A kite can be used to ask questions, request information, or informally resolve disputes. (*Id*. at 2.)

May 26, 2012 for the same reasons. (Paulson Aff. Ex. F at 5.) Defendant McDonald instructed Plaintiff on how best to use naproxen and Tylenol to manage his pain. (*Id.*)

Following the visits from Defendant McDonald, Plaintiff continued to send numerous kites about pain in his thumb. (*See* Paulson Aff. Ex. G at 4–6.) Plaintiff continually requested to see a doctor about the pain or have an x-ray taken. (*Id.*) Defendant Jennifer Smith examined Plaintiff's thumb on September 16, 2012. (J. Smith Aff. ¶ 6.) Defendant Smith determined that Plaintiff had adequate circulation, full range of motion, and no pain when she pressed on the joint. (*Id.*) Smith offered to put Plaintiff's name on the list to see a nurse practitioner, but Plaintiff refused, wanting to see a doctor. (*Id.*) Plaintiff was reminded that while in segregation, he could only see the nurse practitioner unless the nurse practitioner ordered otherwise. (*Id.*) The visit ended when Plaintiff became belligerent. (*Id.*)

### C.    Plaintiff's Grievance Process

On August 31, 2012, Plaintiff attempted to file a grievance regarding the medical attention given to his thumb. (Thron Aff. Ex. A, ECF No. 35.) Rather than attaching copies of the correspondence he sent to individuals within the chain of command, Plaintiff hand-wrote copies of kites he sent and the responses he received. (*Id.*) In response to this, Margaret Thron, the grievance coordinator at MCF-STW, rejected Plaintiff's grievance and informed him that original copies of the correspondence needed to be attached. (Thron Aff. ¶ 3.) Plaintiff did not resubmit his grievance. (*Id.*)

Additionally, Plaintiff alleges that he wrote both to Defendants Nan Larson and Michelle Smith. (Letter to Clerk's Office from Harvey Dupey, ECF No. 4.) Plaintiff

states that Defendant Larson did not respond and Defendant Michelle Smith answered by stating she would stand by her medical staff. (*Id*.) Both Defendant Larson and Defendant Michelle Smith claim not to know of correspondence from Plaintiff. (Larson Aff. ¶ 2; M. Smith Aff. ¶ 3.)

Plaintiff filed this action alleging a violation of 42 U.S.C. § 1983 and medical negligence under Minnesota state law. Plaintiff then filed two Motions for Writs of Habeas Corpus Ad Testificandum. (ECF No. 18-19.) Defendants now move for dismissal and summary judgment.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the burden of demonstrating that no genuine issue of material fact remains to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to demonstrate with "specific facts" that a disputed issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts must make all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Exhaustion under 42 U.S.C. § 1997e(a)

Before a prisoner may bring a suit pursuant to 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Proper exhaustion requires a prisoner to utilize all the steps available in the administrative process as well as "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Administrative exhaustion is mandatory and unexhausted claims may not be brought to court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). If the claim has not been exhausted, dismissal is mandatory. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). Furthermore,

> [u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing . . . to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory.

*Id*. (emphasis in original).

The DOC has a grievance procedure available for inmates to raise issues concerning the conditions of their confinement. (Ebeling Aff. ¶ 2.) Before a grievance is filed, inmates are required to send kites to those involved and proceed through the chain of command. (*Id*. at ¶ 3.) If the issue cannot be resolved, a prisoner may file a formal grievance. (*Id*.) Grievances must be filed within 30 days of the occurrence of the issue being grieved. (*Id*.) A warden or a designee decides the grievance; if the prisoner is not

satisfied with the decision he may file an appeal. (*Id*.) A grievance appeal is decided by either the Commissioner of Corrections, the Assistant Commissioner, or the Deputy Commissioner. (*Id*.) The decision on appeal is considered the DOC's final response. (*Id*.) A prisoner has fully exhausted the administrative remedies when he has completed all of the above steps and received an appeal decision from the DOC.

Plaintiff failed to exhaust his administrative remedies before filing the present suit. Plaintiff filed this suit on May 22, 2012. (*See* Compl.) Plaintiff's first formal grievance was not filed until August 31, 2012. (Thron Aff. Ex. A.) Based on these facts, Plaintiff failed to exhaust his administrative remedies before filing the present suit. Indeed, the formal grievance process had not even *begun* until more than three months after the suit was filed. Because "exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson*, 340 F.3d at 627.

Furthermore, this Court recommends that the claims be dismissed with prejudice. Any attempts by Plaintiff to file grievances regarding the medical treatment of his thumb at MCF-STW in accordance with the DOC guidelines would be procedurally barred. Grievances must be filed within 30 days of the occurrence to be grieved. The deadline for filing a grievance for the alleged conduct at issue here has passed. Plaintiff has been incarcerated at Oak Park Heights since October 4, 2012. (Hudson Aff. Ex. A at 2.) No treatment of his thumb at MCF-STW has occurred for him to grieve since that time. Because he cannot now exhaust his remedies, he has procedurally defaulted on his claim. Plaintiff's suit is thus precluded and must be dismissed with prejudice. *See Woodford*, 548 U.S. at 92-93 (comparing procedural default in habeas cases to proper

exhaustion under 1997e(a)); *Parks v. Dooley*, Civil No. 09-3514 (PAM/JSM), 2011 WL 847011 at *18 (D. Minn. Feb. 11, 2011) (applying *Woodford* and dismissing with prejudice a 1997e(a) claim that could no longer be administratively exhausted), *adopted in relevant part by* 2011 WL 841278 (D. Minn. Mar. 8, 2011).

### C. Medical Negligence

Plaintiff also alleges that the Defendants committed medical negligence. An action alleging medical negligence must comply with the expert-affidavit requirements of Minnesota Statutes § 145.682. *See Anderson v. Rengachery*, 608 N.W.2d 843, 846 (Minn. 2000); *Paulos v. Johnson*, 502 N.W.2d 397, 400 (Minn. Ct. App. 1993). Section 145.682 concerns cases in which expert testimony is needed to establish a prima facie case. Minn. Stat. § 145.682, subd. 2. In such a case, a plaintiff must serve with the summons and complaint an affidavit stating that the facts of the case have been reviewed by the plaintiff's attorney with an expert, and that in the expert's opinion the defendant deviated from the standard of care. *Id.*, subds. 2, 3. Failure to comply with this provision within 60 days of a demand by the defendant for such an affidavit will result, upon motion, in mandatory dismissal with prejudice. *Id.*, subd. 6; *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 726 (Minn. 2005). Within 180 days after commencing the suit, a plaintiff must serve upon the defendant an affidavit signed by the expert that the plaintiff expects to call at trial. Minn. Stat. § 145.682, subd. 2, 4. This affidavit must identify the substance of the facts and the expert's opinions, and the grounds for each opinion. *Id*. Failure to comply with this provision also will result, upon motion, in

mandatory dismissal with prejudice. *Id.*, subd. 6. A plaintiff is bound by this statute even if pro se. *Id.*, subd. 5.

To fall within the purview of § 145.682, Plaintiff's claim must require expert testimony to make a prima facie case. This testimony is required when a case involves complex science and an expert is needed to assist the jury. *Tousignant v. St. Louis County*, 615 N.W.2d 53, 58 (Minn. 2000). The statute does not apply to situations in which the negligence is within the general knowledge of laypersons. *Mercer v. Anderson*, 715 N.W.2d 114, 122 (Minn. Ct. App. 2006). Only rarely does a medical negligence case not require expert review. *Id.* This case is not one of those rare exceptions. The claim here involves chronic thumb pain and previously fractured bones. It raises questions about the proper course of treatment in such a case and whether the treatment provided was the correct course of action or if an x-ray and different drugs were required. Whether the treatment Plaintiff received deviated from the applicable standard of care is beyond the scope of knowledge of the general population. Expert testimony is thus required, and § 145.682 applies.

Plaintiff's claim must be dismissed because he did not satisfy the expert-disclosure requirements of § 145.682. The initial complaint and summons were sent without the affidavit. Defendants demanded an affidavit as set forth in § 145.682, subd. 6, and Plaintiff did not comply within 60 days. (Second Jacot Aff. ¶ 2.) In addition, more than 180 days have passed since this suit was filed, and Plaintiff has not filed an affidavit signed by an expert regarding the opinion expected to be given at trial. Because Plaintiff did not satisfy either of the requirements, this claim must be dismissed with prejudice.

*Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 726 (Minn. 2005); *Teffeteller v. Univ. of Minnesota*, 645 N.W.2d 420, 426 (Minn. 2002).

## III. RECOMMENDATION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motions for Dismissal and Summary Judgment (ECF Nos. 28, 50) be **GRANTED**;

2. Plaintiff's Motions for Writs of Habeas Corpus Ad Testificandum (ECF Nos. 18-19) be **DENIED AS MOOT**; and

3. This matter be **DISMISSED WITH PREJUDICE**.

Date: July 23, 2013

s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Dupey v. Smith, et al.*
File No. 12-cv-1233

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. The Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **August 7, 2013**.